UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN LEWIS,

    Plaintiff,

v.                                            Case No.:  8:20-cv-2262-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Kevin Lewis seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits and for supplemental security income benefits on February 21, 2018, alleging disability beginning September 10, 2015. (Tr. 127, 128, 252-58). The applications were denied initially on April 3, 2018, and upon reconsideration on June 12, 2018. (Tr. 1227, 128, 167, 168). Plaintiff requested a hearing and on October 29, 2019, a hearing was held before Administrative Law Judge David Herman ("ALJ"). (Tr. 42-97). On November 19, 2019, the ALJ entered a decision finding Plaintiff not under a disability from September 10, 2015, through the date of the decision. (Tr. 17-33).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on July 28, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on September 25, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 21).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2015, the alleged onset date. (Tr. 19). At step

two, the ALJ found that Plaintiff had the following severe impairments: "obstructive sleep apnea; narcolepsy/cataplexy; seizure disorder; asthma; autism spectrum disorder; depression; anxiety; agoraphobia/panic disorder; attention-deficit hyperactivity disorder; obsessive compulsive disorder; post-traumatic stress disorder; executive functioning disorder; hallucinogen persisting perception disorder with residual visual disturbances; and opioid dependency." (Tr. 19-20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 20-21).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can occasionally climb stairs and balance; he can never climb ladders; he can occasionally tolerate exposure to extreme cold, extreme heat, wetness, humidity, dust, fumes and pulmonary irritants; he can never work around workplace hazards such as unprotected heights and moving mechanical parts; he can occasionally drive a motor vehicle as a job duty; and he can frequently interact with coworkers, supervisors and the general public.

(Tr. 23).

The ALJ found Plaintiff was capable of performing his past relevant work as a data entry clerk as performed by Plaintiff and as generally performed in the national economy. (Tr. 30-31). The ALJ determined that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 30). Alternatively at step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (25 on the alleged onset date), education (at least a high school education with 4 or more years of college), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32). Specifically, the ALJ found that Plaintiff could perform such representative occupations as:

(1) cafeteria attendant, DOT 311.677-010,[1] light, unskilled, SVP 2

(2) cleaner, DOT 323.687-014, light, unskilled SVP 2

(3) folder, DOT 369.687-018, light, unskilled, SVP 2

(Tr. 32). The ALJ concluded that Plaintiff had not been under a disability from September 10, 2015, through the date of the decision. (Tr. 32).

## II.   Analysis

On appeal, Plaintiff raised a single issue: (1) whether the ALJ properly evaluated the opinions of five different medical providers. (Doc. 24, p. 11). Plaintiff

---

[1] "DOT" refers to the Dictionary of Occupational Titles.

claims that the ALJ did not fully explain the "somewhat persuasive" finding for the opinions of Ronald Lopez, M.D., David Campopiano, ARNP, Danielle Sutton, M.D., Scott Perrino, M.D., and Annette Becklund, MSW, LCSW. (Doc. 24, p. 13). Plaintiff argues that the ALJ erred in discounting these five opinions based on the medical providers not having reviewed all of the evidence, the evidence of record not supporting the mental health providers' opinions, and Plaintiff's daily activities conflicting with these opinions. (Doc. 24, p. 14-25). The Commissioner argues that the ALJ properly considered the various medical opinions, explained his decision, supported his findings with substantial evidence, and properly considered Plaintiff's daily activities. (Doc. 25, p. 8-16). For the following reasons, the ALJ's decision that these five mental health providers' opinions were somewhat persuasive was not supported by substantial evidence of record.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a

statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

The ALJ discussed Plaintiff's psychological impairments, finding objective mental status examinations throughout the record had been relatively benign. (Tr. 27). In support, he cited an evaluation in March 2013, where the examination found Plaintiff's mental-status examinations were grossly normal and appropriate to age with superior cognition, and his thought process was noted to be highly focused with the main concern to be management of anxiety. (Tr. 24). The ALJ then discussed: neurological examinations in April and May 2016 that were grossly normal with stable mood; cognitive testing in January 2017 reflecting an IQ of 113 with a Verbal IQ of 130; a January 2017 qEEG test, and notation that Plaintiff had challenges with executive functioning, judgment, and planning; and a March 2017 neurological exam that questioned the clinical value of the qEEG testing, and upon examination found Plaintiff within normal limits except for poor eye contact. (Tr. 27).

The ALJ then contrasted the five mental health providers' opinions with the above neurological examinations:

> By contrast, in January 2018, Dr. Ron Lopez opined that the claimant has severe emotional, cognitive and social impairments (Exhibit 27F/3). In April 2018, Dr. Lopez opined he has marked limits with activities of daily living (ADL's), social functioning and extreme limits with concentration persistent and pace, and is likely to decompensate (Exhibit 12F). In June 2018, David Campopiano, ARNP, opined that the claimant has extreme social and concentration limits (Exhibit 12F/8). In August 2018, Dr. Danielle Sutton diagnosed the claimant with Autism Spectrum Disorder, apparently based on review of a functional report from the claimant's mother, noting social difficulties (Exhibit 14F). In November 2018, Dr. Scott Perrino, opined that the claimant's "depression is also disabling and his anxiety is doubly disabling. [The claimant] has agoraphobia and has difficulty even making appointments with myself whom he is relatively comfortable..." (Exhibit 17F). In January 2019, David Campopiano, ANRP, indicated that he has been the primary treating clinician for the claimant from July 2017 to the present and opined that he remains mentally incapacitated due to autism spectrum disorder (ASD), anxiety, depression and trauma/stressor disorder (Exhibit 23F). He further stated that the Autism diagnosis is supported by genetic testing; however, review of this lab work appears to note results of "uncertain clinical significance" (Exhibit 18F/2).
>
> As discussed below, the undersigned finds the psychological opinions listed above somewhat persuasive; however, the undersigned finds the claimant less limited based on the overall evidence received at the hearing level. Many of the suggested limitations in the opinions appear extreme in nature and scope as they are inconsistent with numerous grossly normal mental status examinations noted throughout the record and are simply not supported by specific objective signs and findings supporting a conclusion that the claimant has more than moderate psychological limitations or is otherwise psychologically incapacitated. In addition, the undersigned notes that many of the suggested limitations in the opinions appear to be at odds with the claimant's rather

> extensive litany of daily activities, independent living arrangement, social dating history, video gaming hobby, online computer research skills, semi-skilled work history, educational achievement, and intellectual aptitude as discussed above and below.

(Tr. 27).

Later in the decision, the ALJ articulated generally similar reasons why he found each of the five mental health providers' opinions somewhat persuasive. (Tr. 29-30). For example, for psychiatrist Ron Lopez, M.D. the ALJ found his opinion somewhat persuasive, but found Plaintiff less limited based on the overall evidence. (Tr. 29). The ALJ first determined that Dr. Lopez did not have the benefit of reviewing all of the evidence received at the hearing level before rendering an opinion and therefore the opinion was not reflective of the totality of the evidence. (Tr. 29). Second the ALJ found Dr. Lopez's opinions "somewhat extreme in nature and scope and simply unsupported by his treatment records and other objective evidence in the longitudinal medical record as discussed above." (Tr. 29). And third, the ALJ found that Dr. Lopez's suggested limitations appear at odds with Plaintiff's "rather extensive litany of daily activities, independent living arrangement, social dating history, video game prowess, online computer research skills, semi-skilled work history, educational achievement, and intellectual aptitude as discussed above." (Tr. 29).

To begin, the Court will focus on the ALJ's discussion of supportability and consistency of the five doctors' opinions, in light of their treatment records and other records in evidence. Plaintiff argues that the ALJ improperly relied on a mental status examination from March 2013, which was more than two years before the onset date of Plaintiff's disability. (Doc. 24, p. 18). Plaintiff also argues that the ALJ focuses on a series of neurological evaluations and not on mental health providers' evaluations. (Doc. 24, p. 18).

Beginning with psychiatrist, Dr. Lopez, the ALJ found Dr. Lopez's opinions somewhat extreme and unsupported by his treatment records and other objective evidence. (Tr. 29). But the ALJ failed to discuss in any meaningful way Dr. Lopez's actual treatment records. (Tr. 29). The ALJ simply made this general and conclusory statement unsupported by any discussion of Dr. Lopez's specific treatment records and how these treatment records do not support his opinion. To discount a physician's opinion as inconsistent with his own treatment records, the ALJ must articulate a genuine inconsistency. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262-63 (11th Cir. 2019) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

As Plaintiff argues, to support a somewhat persuasive finding, the ALJ relied on a March 2013 mental-status examination results, but this evaluation was conducted over two years prior to the onset day, and has little relevance to the period

at issue. (Tr. 27). The ALJ also relied on some mental-status examination results conducted by neurologists. (Tr. 27). And while these examination results were generally within normal limits, the ALJ failed to explain why results from neurologists would mean that opinions from mental health providers – who practice a different specialty and consider different aspects of a person's mental health – constituted reasons to find five mental health specialists' opinions somewhat persuasive. In the Memorandum, the Commissioner attempts to supports the ALJ's decision by citing certain treatment notes from Dr. Lopez. (Doc. 25, p. 9). But the Commissioner did not indicate that the ALJ referred to or discussed these treatment records in the decision, and the Commissioner's argument constitutes a post hoc rationalization and does not provide a basis for judicial review of the administrative decision. *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) ("If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order."). Without discussion of Dr. Lopez's treatment records and citations only to neurologists' examinations, substantial evidence does not support the ALJ's finding that Dr. Lopez's opinion was somewhat persuasive.

Another reason the ALJ found Dr. Lopez's opinion somewhat persuasive was that he did not have the benefit of reviewing all of the hearing evidence before making his opinion. (Tr. 29). This argument has little merit. (Tr. 29). While true that Dr. Lopez did not have the benefit of reviewing all of the hearing level evidence, Dr.

Lopez treated Plaintiff from November 2015 through at least the date he completed the April 2018 Mental Impairment Questionnaire. (Tr. 785, 902). His opinion was based on his treatment records. It is the ALJ's duty to evaluate all of the evidence and then assess the RFC, and not a mental health provider's duty to examine all of the hearing evidence before rendering an opinion. Thus, substantial evidence does not support this reason.

Plaintiff also argues that his daily activities were not at odds with his suggested limitations. (Doc. 24, p. 21). The Commissioner contends that while not dispositive, Plaintiff's activities show that his symptoms were not as limiting as alleged. (Doc. 25, p. 15). The ALJ cited daily activities such as independent living, social dating, video game prowess, online computer research skills, semi-skilled work history, educational achievement, and intellectual aptitude and found these activities or conditions appear at odds with the five mental health providers' opinions. (Tr. 29). As Plaintiff argues, these activities do not follow a set schedule and Plaintiff could structure these activities to avoid times when his mental health symptoms were severe. It is also unclear whether the ALJ considered the differences between daily activities and a structured work environment that would not allow flexibility. *See Schink*, 935 F.3d at 1263-64.

Similarly, the ALJ discounted the opinion of David Campopiano, ANP-BC, PMNP-BC.[2] (Tr. 29). Campopiano treated Plaintiff from July 2017, through January 2019. (Tr. 874). The ALJ found Campopiano's somewhat extreme opinion unsupported by his treatment records and other objective evidence. (Tr. 29). Again, the ALJ simply makes this general and conclusory statement without specifically discussing Campopiano's treatment records. (Tr. 29). And the other records the ALJ cited earlier in the decision – showing grossly normal mental status examinations and objective evidence – came from neurologists, not psychiatrists, psychologists, or other mental health providers. (*See* Tr. 27). Without discussion of Campopiano's treatment records and citations only to neurologists' examinations, substantial evidence did not support the ALJ's finding that Campopiano's opinion was somewhat persuasive. For the same reasons discussed above, substantial evidence does not support discounting Campopiano's opinion as somewhat persuasive based on Plaintiff's daily activities. Likewise, these same reasons apply to the opinions of Danielle Sutton, Ph.D., BCBA[3], and F. Scott Perrino, M.D.[4] (Tr. 29-30). Thus, the ALJ's finding that these mental health providers' opinions were somewhat

---

[2] "ANP-BC" stands for an adult nurse practitioner, board certified and "PMNP-BC" stands for psychiatric mental health nurse practitioner, board certified.

[3] "BCBA" stands for board certified behavior analyst.

[4] The ALJ included the same reasons to discount Annette L. Becklund's opinion. (Tr. 30). The record only contains Becklund's opinion letter and does not appear to contain treatment notes. (Tr. 1116).

persuasive based on a determination that these medical providers' opinions were unsupported by their own treatment records and inconsistent with the record as a whole was not supported by substantial evidence.

The Court is aware that in conducting this review of the record as a whole, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). In making its determination, the Court focused on whether substantial evidence supported the ALJ's persuasiveness finding for these five mental health providers as to supportability and consistency. It did not. Thus, the Court will reverse this action and remand this action for further proceedings.

### III. Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr, Lopez's, ARNP Campopiano's, Dr. Sutton's, Dr. Perrino's and MSW Becklund's opinions in conjunction with the medical and other evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on January 14, 2022.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties